# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————— )
In Re: )
)
CYPHERMINT, INC., )
) **Civil Action No.**
Debtor, ) **09-40138-FDS**
———————————————————————— )
)
JOSEPH H. BALDIGA, Chapter 7 )
Trustee of the Bankruptcy Estate of )
CYPHERMINT, INC., )
)
Plaintiff, )
)
v. )
)
ROBERT BOWDRING, JOSEPH )
BARBOZA, and ARTHUR FEATHER, )
)
Defendants, )
)
v. )
)
SOVEREIGN BANK, )
)
Reach-and-Apply Defendant. )
———————————————————————— )
-

## MEMORANDUM AND ORDER ON DEFENDANT ARTHUR FEATHER'S MOTION TO VACATE JUDGMENT

**SAYLOR, J.**

This is a request for relief from judgment in a bankruptcy proceeding. A default judgment

in the amount of $500,000 was entered against defendant Arthur Feather following his failure to

appear in court. Feather now moves to vacate the judgment under Fed. R. Civ. P. 60(b)(1), (4),

and (6) and requests a trial on the issue concerning him. For the following reasons, the motion will be denied.

## I.     Factual and Procedural Background

Unless otherwise noted, the following facts are undisputed.

This case arose from two adversary proceedings initiated in Bankruptcy Court by plaintiff Joseph Baldiga, Chapter 7 Trustee of the estate of Cyphermint, Inc. The proceedings were brought against defendants Robert Bowdring, Joseph Barboza, and Arthur Feather to recover alleged avoidable preferential payments. In essence, certain investors agreed to put money into Cyphermint under a stock purchase agreement, with certain restrictions on the use of the funds (such as to pay identified debts). Bowdring and Barboza were corporate officers who diverted some of those funds to pay off their own loans. The Trustee alleged that Barboza had transferred some of those funds to Feather.

Feather represented himself throughout the proceedings; no attorney ever signed a pleading or entered an appearance on his behalf. Feather actively participated in matters before the Bankruptcy Court, filing an answer as well as an opposition to the Trustee's motion for summary judgment. (Def. Mot. Vacate at 2).

Feather received assistance from Terrell Root, an attorney at the law office of James Sullivan in Los Gatos, California. (*Id.*). Root would add a cover page, verification page, and proof-of-service page to Feather's submissions and mail them to the appropriate parties. (*See, e.g.*, Fisher Aff. Ex. E). Feather's submissions listed his home address under his signature, but Sullivan's law office was listed as the return address. All transactions were conducted by mail;

Feather never sought to use the electronic filing system.

Apparently because Feather used the address of Sullivan's law office as the return address in his mailings, James Sullivan was listed on the Bankruptcy Court docket as Feather's attorney. That was erroneous, as Sullivan never entered an appearance.[1] At least some mailings from the parties were sent to Sullivan's law office.[2] Upon receipt of documents at Sullivan's office, Root would notify Feather that paperwork was there for his pickup, and Feather would come to collect it. (Pl. Reply at 7). Although neither Root nor Feather understood why some case materials were sent to Sullivan's office, they did not inquire with the Bankruptcy Court or the parties about the error.

The case was transferred to this Court on August 10, 2009, for trial of the adversary proceeding. After the transfer, the docket in this Court continued to list James Sullivan as Feather's attorney. Feather contends that from that point forward all notices and communications to Sullivan's office and to his home stopped, with the exception of a notice to Sullivan from the Court regarding use of the electronic filing system, which Sullivan apparently disregarded. (Def. Mot. Vacate at 3 n.4).[3] Neither Feather nor Sullivan appeared at any court proceeding, including the pretrial conference (held on January 15, 2010) or the final pretrial conference (held on March 10, 2010).

---

[1] Neither Sullivan nor Root are members of the Massachusetts bar.

[2] Other mailings apparently were sent directly to Feather's home address. (Pl. Mot. Vacate at 2; Pl. Reply at 7).

[3] The Trustee contends that he continued to mail paper copies of all pleadings and motions to Root, as required by the local rules. The Trustee further contends that he sent follow-up e-mails to Root on several occasions. (*See* Fisher Aff. Exs. K, L).

In any event, the parties agree that Feather took no action until less than two weeks before

trial, when he contacted the Trustee's counsel, Matthew Fisher, to inquire about the status of the

case. Fisher told Feather that Barboza was raising a "conduit" defense (that is, that he was a mere

"conduit" for payments to Feather, and not an "initial transferee"); that Fisher was moving to

exclude that defense; and that, if the motion were allowed, it could end the claims against Feather.

(Def. Reply Ex. 1 ¶ 9). On March 3, 2010, the Trustee so moved. The Court, however, denied

that motion on March 10. Later on March 10, Fisher sent an e-mail to Feather's personal address,

which stated as follows:

> Mr. Feather,
>
> I am writing to follow up on our phone conversation from last week. As I indicated on
> the phone, we had filed a motion with the Court to deny Mr. Barboza's conduit defense,
> which would be decisive on how we proceed with the issue that concerns you at the trial that
> starts on March 15th. The District Court held a hearing this afternoon at which hearing
> the Judge denied the Trustee's motion to exclude Mr. Barboza's conduit defense. As
> such, the claim that concerns you has not been dropped.

(Fisher Aff. Ex. M).[4]

On March 11, Barboza, Bowdring, and the Trustee submitted a stipulation to the Court.

Among other things, the parties stipulated that "[t]he Trustee's claim against defendant Arthur

Feather shall be reserved for the Court following the jury's verdict on the Trustee's preference

claims against Barboza." There is no evidence that Feather was aware of that stipulation at the

time it was executed.

A jury trial on the claims against Barboza and Bowdring took place between March 15 and

19, 2010. Among other things, there was evidence that (1) Cyphermint, the debtor corporation,

___

[4] Feather acknowledges receiving this e-mail. (*See* Def. Reply Ex. 1 ¶ 9).

had received funds prior to April 17, 2008, that were intended for investment in the company or to pay certain specified debts; (2) that a substantial amount of those funds was diverted to Barboza, a company insider, on April 17, 2008; (3) that a substantial amount was also diverted to Bowdring, also a company insider; (4) that the company was insolvent at the time of the transfers; (5) that Barboza transferred $500,000 of those funds to Feather on April 17, 2008; and (6) that an involuntary bankruptcy petition was filed against Cyphermint on August 21, 2008. The jury found that there had been preferential transfers to Barboza (in the amount of $273,342) and Bowdring (in the amount of $208,126). It did not hold Barboza responsible for the $500,000 sent to Feather, apparently believing that he was merely a conduit for that transfer.

On March 23, the Trustee moved for an entry of default judgment against Feather in the amount of $500,000 plus costs, contending that "Mr. Feather failed to appear and defend at trial in this Court, although he had previously appeared through counsel in the adversary proceeding." (Pl. Mot. for Default J. at 2). The Trustee certified that this motion was "sent electronically to the registered participants" and that "paper copies will be sent to those indicated as non-registered participants." Presumably, it was mailed to Sullivan's office. Feather contends that Sullivan's office never received it.

Noting that Feather had failed to file an opposition, the Court granted the Trustee's motion on April 9. Judgment entered on April 28 against Feather in the amount of $500,000 and against all defendants for costs in the amount of $6404.45.

Feather contacted the Trustee's counsel again in early May 2010 to check on the status of the case, and was informed of the default judgment. He promptly signed up for the PACER

system (allowing him electronic access to the docket), downloaded a copy of the district court docket, (Def. Mot. Vacate Ex. 2 ¶ 11), and retained counsel in Massachusetts. On May 25, Feather's counsel informed the Trustee that Feather would not be appealing the judgment. (Fisher Aff. ¶ 16). The motion to vacate followed on July 19.[5]

In connection with the motion to vacate the judgment, Feather has submitted an affidavit in which he contends that he was aware that a trial was taking place, but chose not to participate in the proceedings because he believed that the claims against him were to be resolved separately after the trial. He also stated that if he had "been informed that [his] rights were or even could be affected by this jury trial [he] would have attended the trial and had counsel representing [him]." (Def. Mot. Vacate Ex. 2 ¶ 13). He stated that he represented himself because he has "a hard time asking for help, in general," that he "did not believe that [he] needed an attorney," and that because of injuries suffered in an automobile accident, he "was on so many medications at that time that [he] was not always thinking clearly." (*Id.* Ex. 2 ¶ 6).

## II.    <u>Standard of Review</u>

Fed. R. Civ. P. 60(b) provides a mechanism for setting aside a judgment in certain circumstances. The rule provides in relevant part:

> [T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1)    mistake, inadvertence, surprise, or excusable neglect;
>         . . .
> (4)    the judgment is void;
>         . . .

---

[5] Feather also moved the stay execution of judgment pending resolution of his motion to vacate, which the Court granted on July 26.

(6)     any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Although other circuit courts have adopted a liberal approach to granting Rule 60(b) motions, the First Circuit has taken a "harsher tack." *Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe*, 257 F.3d 58, 64 (1st Cir. 2001). "Because Rule 60(b) is a vehicle for extraordinary relief, motions invoking the rule should be granted only under exceptional circumstances." *Id.* (quoting *Torre v. Continental Ins. Co.*, 15 F.3d 12, 14-15 (1st Cir. 1994)) (internal quotation marks omitted). "The rule must be applied so as to recognize the desirability of deciding disputes on their merits, while also considering the importance of finality as applied to court judgments." *Davila-Alvarez*, 257 F.3d at 64 (internal citations and quotation marks omitted).

## III.     Analysis

While the above principles govern Rule 60(b) relief generally, "the precise contours of the applicable standard will depend on the particular subsection involved and the nature of the underlying judgment from which relief is sought." *United States v. Kayser-Roth Corp.*, 272 F.3d 89, 95 (1st Cir. 2001). Here, defendant advances theories under Rule 60(b)(1), (4), and (6). The Court considers each in turn.

### A.     Excusable Neglect under Rule 60(b)(1)

Rule 60(b)(1) requires a showing of "excusable neglect" in order to obtain relief from final judgment. *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 164 (1st Cir. 2004).[6] Under

---

[6] The United States Supreme Court outlined the standard for "excusable neglect" in *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993). Although that standard arose under the bankruptcy code, courts in the First Circuit have consistently applied it when conducting an analysis under Rule 60(b)(1). *$23,000 in U.S. Currency*, 356 F.3d 157 at 164 n.7; *Davila-Alvarez*, 257 F.3d at 64 n.9.

this standard, the Court is permitted, "where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993)). In making that determination, the Court must consider the length of delay, the reason for delay, whether the movant acted in good faith, and prejudice to the opposing party. *Davila-Alvarez*, 257 F.3d at 64. Of all the factors, "the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a closer case, . . . . At the end of the day, the focus must be upon the nature of the neglect." *Hospital del Maestro v. Nat'l Labor Relations Bd.*, 263 F.3d 173, 175 (1st Cir. 2001) (internal citations and textual alterations omitted); *accord $23,000 in U.S. Currency*, 356 F.3d at 164.

The standard for excusable neglect is a "demanding" one. *$23,000 in U.S. Currency*, 356 F.3d at 164. The litigant has a responsibility to understand the procedural rules affecting his or her case, and "ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Id.* The litigant, once on notice of the claim against him, likewise has a responsibility to inquire into the status of the case, and mistakes or errors that could have been corrected by such inquiry also do not normally qualify as "excusable neglect." *See Cintron-Lorenzo v. Departamento de Asuntos del Consumidor*, 312 F.3d 522, 527 (1st Cir. 2002) (A litigant's "duty of attending to the case is not automatically excused by personal tragedy or emotional upheaval."); *Claremont Flock Corp. v. Alm*, 281 F.3d 297, 299-300 (1st Cir. 2002) ("In our adversary system of justice, each litigant remains under an abiding duty to take the legal steps necessary to protect his or her own interests."); *Davila-Alvarez*, 257 F.3d at 65 (no excusable

neglect where litigant failed "to communicate with the district court or alert defendants that they were using the incorrect address").

Pro se litigants are normally held to the same standard. *See Cintron-Lorenzo*, 312 F.3d at 527 (*pro se* litigant's failure to keep the Court apprised of her situation or to seek approval for repeated noncompliance with deadlines was not excusable neglect, despite personal tragedy); *Claremont Flock*, 281 F.3d at 299-300 (*pro se* litigant who did not receive court notices was nevertheless denied relief under 60(b), where he failed to update his address with the Court and erroneously believed that the case was over); *Pizzo v. Gambee*, 754 F. Supp. 2d 234, 237 (D. Mass. 2010) (*pro se* litigant's failure to meet deadline was not excusable neglect, although he erroneously believed he had responded to the case in an appropriate manner); *Capizzi v. States Res. Corp.*, 2005 WL 113679, at *5 (D. Mass. Jan. 20, 2005) (*pro se* status did not relieve plaintiffs from general duty to inquire with the court and did not excuse misunderstanding of the law); *see Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 807 (8th Cir. 2002) (*pro se* party's ignorance did not excuse failure to meet filing deadline, where timing was provided in the court rules). This is especially true where there is no indication that the *pro se* litigant lacks capacity to participate in court proceedings. *See Claremont Flock*, 281 F.3d at 299 (*pro se* litigant not entitled to special treatment where litigant was a "sophisticated" businessman); *Bennett*, 295 F.3d at 808 (same where litigant had competently participated in court proceedings and was not hampered by indigence, lack of basic education, or prisoner status).

Defendant makes two primary contentions. First, he contends that he lacked notice of the

trial, as well as all proceedings before the District Court.[7] Second, he contends that he did not

understand that the trial could affect his rights. Although the Court has some sympathy for

defendant, these reasons do not rise to the level of "excusable neglect" under the law of this

circuit.

As a starting point, the Court notes that defendant elected to proceed *pro se* in this matter,

although he is not indigent.[8] He was within his rights to proceed *pro se*, but by doing so he

accepted considerable risk. Among other things, he ran the risks that he would not understand

what was occurring in the case, and how it might affect him; that he would not be able to

communicate his positions to the Court in a timely and effective manner; and that he would not

receive adequate notice of proceedings that affected him.[9]

As a *pro se* litigant, defendant was personally responsible for making certain that the

address on file with the Court was correct. Defendant's filings with the Court apparently included

two addresses: his home address (which he put next to his signature) and the address of attorney

Sullivan's office (which was used as the return address on the envelope). It appears that the

---

[7] Defendant asserts that he was not "formally informed of the trial in district court" and that "he never received written notice from any party or the Court of anything relative to the district court proceedings." (Def. Mot. Vacate at 7).

[8] It is true that he used the services of an attorney to assist him in some respects. That does not, however, change the analysis in any fundamental respect. In this context, at least, there is no middle ground between proceeding *pro se* and being represented by an attorney.

[9] In his first affidavit, defendant suggests that the reason for his delay "had nothing to do with the case against me but everything to do with my life situation and plans to attempt to find work." (Def. Mot. Vacate Ex. 2 ¶ 12). Although the Court is sympathetic to defendant's personal difficulties, they cannot excuse his failure to keep himself reasonably apprised of the case against him. If his personal difficulties prevented him from fully participating in the proceedings, the proper action would have been to contact the Court (or the Bankruptcy Court) and apprise it of his situation. *See Cintron-Lorenzo*, 312 F.3d at 527 (*pro se* party's battle with cancer did not excuse her failure to inform the court of the reason for her non-responsiveness).

bankruptcy clerk's office erroneously entered the Sullivan address on the docket, and that this

address was then sent along to the clerk's office of this Court when the case was transferred.

Defendant had actual knowledge of problems with the mailing address on file with the Bankruptcy

Court, because some materials were inexplicably sent to the office of the attorney who was helping

him, rather than to his home address.  (Def. Reply Ex. 1 ¶ 5) ("During the period of time that the

bankruptcy case was pending sometimes pleadings were sent to Attorney Terry Root [in James

Sullivan's law offices]. . . .  I would get a call from Terry's office to pick up the pleadings and I

would do so.").  Although defendant states that he did not understand why some mailings were

sent to Sullivan's office, he made no inquiries and never acted to correct matters.  When he

stopped receiving communication following the transfer, defendant again did not inquire into the

break in communication, instead assuming that whatever was happening in court did not concern

him.[10]

    In any event, defendant was undisputably aware that proceedings had been initiated against

him.  In fact, he filed an answer, responded to discovery requests, and successfully opposed a

motion for summary judgment in Bankruptcy Court before the transfer.

    Furthermore, defendant received actual notice that the trial was going to occur.  In March,

2010, he had a telephone conversation with the Trustee's counsel, who informed him of the

upcoming trial.  Counsel also told him that the Trustee would be filing a motion against Barboza

---

[10] The Court also notes that defendant did almost nothing to monitor the progress of the case.  There is no
dispute that he was capable of following matters more closely; indeed, his first act upon learning of the default
judgment was to access and examine the docket electronically.  Defendant lives in California, and the Court was
using an address (that he had supplied) that was not his.  There was an obvious risk that critical mailings might be
lost or mishandled, and defendant compounded this risk by ignoring the case for long stretches of time.

that, if granted, would affect the claim against defendant. In an e-mail several days later, counsel informed him that "we had filed a motion with the Court to deny Mr. Barboza's conduit defense, which would be decisive on *how we proceed with the issue that concerns you at the trial* that starts on March 15. (Fisher Aff. Ex. M) (emphasis added). He then stated that the Court had denied the motion, and that therefore "the claim that concerns you has not been dropped." (*Id.* Ex. M). Defendant thus knew in advance not only that the trial was occurring, but that it would affect the claims against him.

Defendant did not, however, take any action. In particular, he did not show up for the trial. Instead, it appeared that he was taking a calculated risk that the Trustee would be able to convince the jury of the falsity of Barboza's claim that Barboza was a mere conduit.

It is true that Barboza, Bowdring, and the Trustee stipulated as a factual matter that "[t]he Trustee's claim against defendant Arthur Feather shall be reserved for the Court following the jury's verdict on the Trustee's preference claims against Barboza."[11] But the Court was never asked to, and never did, sever the Trustee's claims against Feather. Instead, the stipulation simply reflected the reality of the trial: because Feather was not present, the claims against him would not be litigated at the trial. That did not mean, however, that there would be a separate trial, at some future point, at which some of the same issues (such as the "conduit" defense) would be re-litigated. Instead, the claims against Feather would simply be left for resolution—presumably, by a

_____

[11] As noted, there is no evidence that Feather was aware of the stipulation, or that he relied upon it to his detriment.

default judgment—on another day.[12]

Under the circumstances, defendant's decision to do nothing does not amount to excusable neglect. Two cases are instructive on this point. In *Claremont Flock Corp. v. Alm*, a *pro se* defendant erroneously believed that a letter filed with the Federal District Court had put an end to the claims against him. 281 F.3d at 299. In apparent confirmation of this belief, defendant did not receive subsequent court orders, letters from opposing counsel, or discovery requests. *Id.* at 298. In reality, the mailing address listed with the District Court was incorrect, and numerous attempts to contact defendant had failed. Following the entry of default judgment against him, defendant retained counsel and moved to vacate under Rule 60(b)(6). The First Circuit affirmed the District Court's denial of the motion, stating that defendant "made no efforts to confirm that the lawsuit had been dismissed or withdrawn or to notify counsel or the court of an alternative mailing address." *Id.* Although *Claremont Flock* was resolved under a different sub-section of Rule 60(b), that reasoning applies with equal force here.[13]

---

[12] The transcript of the final pretrial conference confirms that the stipulation was entered due to Feather's failure to appear, and not because of any intent to sever the claims:

> [TRUSTEE'S COUNSEL]: . . . . I would suggest since Mr. Feather hasn't participated in the hearing that could well be a legal issue that Your Honor could—could reserve and in the absence of Mr. Feather putting on any defense, if the—if your Honor decides the conduit defense goes to the jury, and if it is successful to the jury, then it seems to me I have an opportunity after the jury verdict to ask Your Honor to enter a $500,000 judgment against Mr. Feather.

> THE COURT: I would assume that that would follow. I can't see any hole in the logic as I sit here. He hasn't appeared to defend it; therefore, we could easily enter default against him. Certainly, he can participate in the trial.

(Final Pretrial Conf. Tr. at 11-12).

[13] Defendant's arguments in *Claremont Flock* all fell within the ambit of 60(b)(1), and the motion had been filed under 60(b)(6) only because the one-year period for filing under 60(b)(1) had passed. *See Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 85 (1st Cir. 2010) (describing *Claremont Flock*).

Similarly, in *Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe*, plaintiff (represented by counsel) stopped receiving communication following the removal of his case to Federal District Court, because the District Court had an outdated address on file. 257 F.3d at 61-62. Plaintiff argued that his neglect should be excused because he never received any post-removal materials. The First Circuit found this argument unpersuasive in light of plaintiff's failure to contact the District Court after learning of the removal. "[This fact does] not automatically excuse his inexplicable refusal to conduct ordinary communication with the federal court." *Id.* at 65.

The current circumstances are analogous to *Claremont* and *Davila-Alvarez* in several important respects. As in those cases, defendant here stopped receiving communications due to an error in the contact information listed on the court docket. Like the litigants in those cases, defendant never affirmatively communicated with the court about this lapse. And like the litigant in *Claremont*, this was due at least in part to defendant's erroneous assumption that events in court did not concern him. Here, as there, defendant's failure to act renders his neglect inexcusable.

Defendant's subjective belief that events in court would not affect him also does not excuse his neglect of the case. *See Claremont Flock*, 281 F.3d at 299-300 (*pro se* litigant's erroneous belief that the case was over did not excuse his failure to check in with the court); *Pizzo*, 754 F. Supp. 2d at 237 (*pro se* litigant's erroneous belief he had responded to the case in an appropriate manner did not excuse his neglect); *Capizzi*, 2005 WL 113679, at *5 (*pro se* status did not excuse misunderstanding of the law). In *Capizzi*, two *pro se* litigants failed to participate in proceedings before the District Court because they erroneously believed that a separate bankruptcy action had

stayed proceedings against them.  2005 WL 113679, at *4.  The court denied their motion to

reconsider an entry of default judgment.  The court reasoned:

> Even if [plaintiffs] possessed against all evidence a good-faith belief that the Bankruptcy Court proceedings stayed further action in this court, they had a duty to confirm this interpretation with the court in light of further developments and associated deadlines in the Present Action as to which they were apprised. . . .  The utter failure of [plaintiffs] to notify this court of their parallel maneuvering in Bankruptcy Court, or to query whether they were thereby relieved of their ongoing obligations in this action, renders their neglect in protecting their interests far from "excusable."

*Id.* at *5.  Here, as in *Capizzi*, defendant's misunderstanding of the effect of the trial on his rights is

not excusable in light of his utter failure to make any inquiry into his case beyond a call to

opposing counsel every couple of months.[14]

---

[14] In his supplemental affidavit, defendant justifies his inaction by pointing to his own ignorance of the law and to the failure of plaintiff's counsel to disclose important information to him during their phone conversation:

> I asked [plaintiff's counsel] if he would give me an update.  He said the Trustee was going before the Judge soon with a motion to disallow Barboza's conduit defense.  He said that if the Judge granted their motion, then the matter involving me would not be pursued further. . . .  I communicated this to my wife, and we tentatively thought this might be over. . . .  When my wife asked more details about what the conduit defense meant, I realized I could not explain it to her, as [counsel] had not provided any detail.  I also thought, somehow, that [counsel] was helping me.  That turned out to be very naive!  The subsequent email from [counsel] was the notice of the Judge's ruling, which meant I was still involved, somehow, though I was not sure how or when.  He did not say which court the Judge was in.  I assumed this would still be the Bankruptcy Court judge who had ruled on everything else . . . .  He did not provide any other information . . . .  He did not ask why I was not aware of this information, why I had not received any updates, or knew nothing about the trial.  It never crossed my mind to mention that Attny. Root did not represent me, as it never occurred to me that anybody could think that he did.

(Def. Reply Ex. 1 ¶ 9).  Defendant's ignorance does not justify his inaction.  Rather, defendant's awareness of his own lack of understanding should have prompted him to retain counsel or otherwise ensure that his rights were being protected.  Furthermore, defendant suffered from none of the handicaps that typically justify leniency.  *See Bennett*, 295 F.3d at 808 (considering *pro se* leniency factors such as indigence, lack of basic education, and prisoner status).  Rather, he had successfully participated in proceedings before the Bankruptcy Court, showing himself to be a competent and educated *pro se* litigant.  He had informal access to legal advice in California, as well as the means to hire an attorney.  And he demonstrated his ability to acquire more detailed information about his case when he downloaded and examined the case docket after learning of the default judgment in May 2010.  Under the circumstances, defendant's failure to understand the nature of the proceedings cannot justify relief under Rule 60(b).

Indeed, defendant's duty to inquire with the Court was only part of a larger responsibility to protect his own interests. "In our adversary system of justice, each litigant remains under an abiding duty to take the legal steps necessary to protect his or her own interests." *Claremont Flock*, 281 F.3d at 299-300 (applying duty to *pro se* litigant). Especially where the decision to proceed *pro se* is not due to indigence, a self-represented litigant retains responsibility to keep himself informed about the case and with the procedural rules governing same. Defendant was fully capable of either contacting the Court or obtaining the docket and other materials, had he wished to do so.[15] Instead, he apparently never even viewed the Bankruptcy Court docket, where the erroneous listing of James Sullivan as his attorney would have been immediately apparent.[16] In short, defendant appears to have believed that he could adequately defend himself without closer attention to the case and without hiring counsel. (Def. Mot. Vacate Ex. 2 ¶¶ 6, 8-9). Now, in hindsight, defendant admits that this was a mistake. But Rule 60(b)(1) does not grant a "free pass" for these kinds of strategic miscalculations. "[W]illfulness (that is, the making of a deliberate strategic choice) is not a ground for relief under Rule 60(b)(1) and, in fact, is directly antagonistic to a claim premised on any of the grounds specified in that subsection." *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 85 (1st Cir. 2010).

Having failed to provide an excusable reason for delay, none of the other factors can save defendant. *See $23,000 in U.S. Currency*, 356 F.3d at 165-66 (party's failure to provide excusable

---

[15] In fact, and as noted, defendant downloaded and examined the docket in May 2010, after he realized that he needed to take a more active interest in his case. (Def. Mot. Vacate Ex. 2 ¶ 11).

[16] This was despite the fact that defendant did not understand why some documents from the bankruptcy proceedings were sent to Sullivan's office instead of to his home.

reason for delay was enough by itself to warrant denial of Rule 60(b)(1) motion). Accordingly, the Court finds that defendant's neglect was not excusable within the meaning of Rule 60(b)(1).[17]

In addition, other factors point against a finding of excusable neglect in this case. Defendant argues that the burden on the Court is slight, and the prejudice to the other parties minimal, if the issues involving him were to be litigated (or re-litigated). In substance, he contends that the $500,000 loan was a personal loan to Barboza that had nothing to do with the affairs of Cyphermint; that Barboza's claim that he was a mere "conduit" for the repayment of a corporate loan is false; and that even if the "conduit" argument is accepted, the Trustee cannot avoid the transfer because Feather is not an "insider" within the meaning of the bankruptcy code.[18]

Defendant in substance is making the following argument: either (1) Barboza was not a "conduit," and Feather is therefore not an "initial transferee," or (2) Barboza was a "conduit," but Feather is not an "insider." (*See* Def. Mot. Vacate at 8-10). Either way, defendant argues, the transfer is not avoidable, and removing the default will require limited additional litigation and

---

[17] Although the Court's opinion assumes that defendant received no materials following the transfer to District Court, the evidence casts some doubt on this fact. First, it is undisputed that defendant regularly received materials sent to Sullivan's office while the case was pending in Bankruptcy Court. Second, plaintiff asserts that he continued to serve paper copies of all filings to James Sullivan's law office. (Fisher Aff. ¶ 17). The Court also notes that failure to do so would be sanctionable under the local rules, and that Feather's co-defendants were under the same obligation. *See* D. Mass. LR 5.2(b)(2) (service required); 1.3 (sanctions). Third, plaintiff has presented evidence that he sent at least one email to Root telling him to expect materials in the mail. (Fisher Aff. Ex. K). Finally, defendant's representations that Sullivan, Root, and he stopped receiving materials after the transfer is undercut by his admission that Sullivan received but ignored at least one notice from the Court. (*See* Def. Mot. Vacate at 3 n.4).

[18] If Barboza was a mere "conduit," then Feather was the "initial transferee." *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988); *see In re BeaconVision, Inc.*, 2009 WL 151594, at *3 (Bankr. D.N.H. Jan. 20, 2009) ("To determine the status of a transferee, courts have uniformly followed the test set forth in *Bonded* . . ."). Where, as here, the transfer of funds occurred more than 90 days but less than one year from the date of the bankruptcy, the Trustee may recover the funds only if the initial transferee was an "insider" at the time. *See* 11 U.S.C. §§ 547(b)(4)(b), 550(a)(1). It is at least doubtful whether Feather was an "insider" of Cyphermint.

avoid an unjust result.

At first blush, the argument has some appeal. The problem, however, is that it is unfair to the Trustee (and to the creditors of the bankruptcy estate) and would require relitigation of an issue already decided by the jury. Suppose, for example, Feather had appeared at the trial and defended his position. Presumably, he would have testified that the loan was a personal matter that had nothing to do with Cyphermint. That testimony would have bolstered the position of the Trustee (that Barboza was not a "conduit") and might well have been credited by the jury. If the jury had believed that testimony, Feather would have been off the hook—but Barboza would have been on it. Instead, Feather ignored the trial, the jury (apparently) concluded that Barboza was a conduit, and now Feather seeks to avoid liability based on the fact that he is not an "insider." The Trustee would thus suffer considerable prejudice, while both Barboza and Feather would benefit from Feather's absence. The only real solution would be to try the case again, with the participation of all parties. In light of the fact that Feather had notice of the trial, and deliberately chose to ignore it, the Court is reluctant to take that step.

Although the Court has a certain degree of sympathy for Feather, it also notes that this result is not manifestly unfair. It may well be true that Feather was not an "insider," and that the loan was a personal loan to Barboza, and that therefore the transferred funds should not be recoverable. On the other hand, the money used to pay back the Feather loan was effectively stolen from the investors: instead of being invested in the company or used to pay the debts listed in the stock purchase agreement, the money was diverted by Barboza and used to pay off a loan from Feather. That clearly should not have happened, and it is far from unfair to require that the

money be returned.

### B.    Void Judgments under Rule 60(b)(4)

Defendant next contends that the judgment is void and should be set aside under Rule

60(b)(4).  In support, he asserts that the bankruptcy code bars entry of judgment against him.

Fed. R. Civ. P. 60(b)(4) provides relief from void judgments.  "A void judgment is from its

inception a legal nullity" and must be set aside.  *United States v. Boch Oldsmobile, Inc.*, 909 F.2d

657, 661 (1st Cir. 1990); *accord Farm Credit Bank v. Ferrera-Goitia*, 316 F.3d 62, 67 (1st Cir.

2003).  The concept of void judgments, however, is "narrowly construed."  *Boch Oldsmobile*, 909

F.2d at 661.  There are only two ways that a judgment can be void:

> A judgment is void, and therefore subject to relief under Rule 60(b)(4), *only* if the court
> that rendered judgment lacked jurisdiction *or* in circumstances in which the court's action
> amounts to a plain usurpation of power constituting a violation of due process.

*Id.* (emphasis original); *accord United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1377

(2010).  Because defendant does not challenge jurisdiction, the judgment is void, if at all, because

the "rendering court's actions so far exceeded a proper exercise of judicial power that a violation

of the Due Process Clause results."  *Farm Credit Bank*, 316 F.3d at 67.

Defendant contends that the judgment is void because it is against the law as set forth in the

bankruptcy code.  But errors of law do not void a judgment.  *United Student Aid Funds*, 130 S.

Ct. at 1377 ("A judgment is not void . . . simply because it is or may have been erroneous.");

*accord Boch*, 909 F.2d at 661-62.  The Court therefore cannot set aside the judgment for this

reason.

Although defendant does not make this argument, judgments may also be void when "a

violation of due process [] deprives a party of notice or the opportunity to be heard." *United Student Aid Funds,* 130 S. Ct. at 1377. "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1378. Actual notice is not required. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Here, it is undisputed that defendant knew of the suit against him and that he knew of the trial before it took place. It is also undisputed that he took no action, beyond a phone call to the opposing party every couple of months, to keep himself informed of matters or to ensure that he was receiving all pertinent communications. Under the circumstances, the Court finds that defendant's due process rights were not violated, even if he did not receive actual notice of plaintiff's motion for default judgment—a proposition that is itself subject to some doubt, as noted above.

### C.    Extraordinary Circumstances under Rule 60(b)(6)

Finally, defendant contends that he is entitled to relief under Rule 60(b)(6) because he did not receive a preferential transfer. This argument may be quickly dismissed. Rule 60(b)(6) is a catch-all provision that provides relief for "any other reason." Fed. R. Civ. P. 60(b)(6). However, with the exception of rare circumstances, Rule 60(b)(6) relief is normally unavailable unless defendant has shown that he is "faultless in the delay." *Ungar*, 599 F.3d at 85, 86 n.5, 87 (Although fault is not a "categorical bar" to relief, "a willful defaulter faces an uphill climb in making the requisite showing of exceptional circumstances."); *Claremont Flock*, 281 F.3d at 299. Under the circumstances discussed above, the Court cannot find that defendant is faultless in the delay or that he is otherwise entitled to exceptional relief. *See Claremont Flock*, 281 F.3d at 299-

300 (*pro se* litigant was denied relief under 60(b)(6) where he failed to update his address with the Court and erroneously believed that the case was over).  Accordingly, the Court will not set aside the judgment under Rule 60(b)(6).

**IV.**     **Conclusion**

For the foregoing reasons, defendant's motion to vacate the judgment is DENIED.  The stay of execution of judgment is hereby vacated.

**So Ordered.**

 /s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: June 10, 2011